PEOPLE *v.* HULL *et al.*

*(Supreme Court, General Term, Fifth Department.*  June, 1892.)

1. SUPERVISORS—REDISTRICTING OF CITY—CONFLICT OF RIGHTS.

A new charter for a certain city provided that the electors of each ward should elect one supervisor, who should hold office for two years; that each supervisor in office at the time the charter went into effect should, for the remainder of his term, be supervisor of the new ward in which he resided, if such ward formed the whole or part of the ward in which he was elected; and that at the next annual election there should be elected a supervisor in each of the said wards in which a supervisor did not hold over. It provided also that all elective officers in office when the charter went into effect should serve out the terms for which they were, respectively, elected. By the old charter the city was divided into 13 wards, 12 of which had two supervisors each, and the other one. By the new charter the city was divided into 25 wards. The board of supervisors had for years been composed of 25 members from the city, and 25 from the towns of the county. *Held,* that the charter contemplated but one supervisor for each ward, and that where a new ward included the whole of one of the old ones, and a small part only of one of the others, and the two supervisors elected to represent the said wards were found to live both in the new ward, the one who had been elected supervisor of the ward so wholly included was entitled to hold as supervisor to the exclusion of the other.

2. SAME—RESIDENCE IN WARD.

1 Rev. St. (8th Ed.) p. 402, § 34, declaring every office to become vacant on the incumbent ceasing to be an inhabitant of the state, county, town, or city for which he shall have been chosen, or within which the duties of the office are to be discharged, requires the supervisor of a city to reside within the ward which he represents.

3. SAME—QUALIFICATIONS OF MEMBERS—DECISION OF BOARD.

The decision of a board of supervisors as to which of two persons who have been elected supervisors of different wards is entitled to the office of supervisor under a new districting, whereby both are brought to reside in the same ward, is not conclusive as to the qualifications of such person, although the board is authorized by statute to pass upon the qualifications of its members.

Case submitted on agreed statement.

Proceeding in the name of the people against Frank H. Hull, Christian Smith, and Thomas H. Munsell.

Case submitted under section 1279 of the Code of Civil Procedure to determine who are supervisors of the Third and Fourth wards of the city of Buffalo. Prior to the adoption of the new charter for the city of Buffalo, March 27, 1891, (chapter 105, Laws 1891,) the city was divided into 13 wards. 1 to 12 inclusive had two supervisors each; ward 13 had one. They held office for two years. By the new charter the city was divided into 25 wards. By the new division the old Second and two elective districts of the old Third made the new Third ward; the remaining districts of the old Third and one district of the old First comprised the new Fourth ward. The defendant Thomas H. Munsell was a resident of and duly elected a supervisor of the old

Second ward at the annual election in 1890, for the term of two years. He had always resided in the same place in said ward at which he resided when elected. He duly qualified, and has since been an acting supervisor. The defendant Christian Smith was a resident of and duly elected a supervisor of the old Third ward at the annual election for 1890, for the term of 2 years. He has always resided, and still resides, in the same place at which he resided when so elected, his place of residence being in one of the election districts of the old Third ward, added as aforesaid, to form the new Third ward. Munsell and Smith qualified as supervisors, and performed the duties of their office for the year 1891, and are still acting supervisors. On the 1st day of October, 1891, there was no supervisor residing within the boundaries of the new Fourth ward. Ascertaining that fact, the city clerk, in giving the required notice of offices to be filled at the annual election in 1891, included the supervisor for said new Fourth ward. The defendant Frank H. Hull and one William Weyand were respectively put in nomination by the two principal political parties as opposing candidates for the office of supervisor for said ward. Hull received 959 votes and Weyand 854. The returns of said election were duly filed and canvassed. A certificate of his election was delivered to Hull. He qualified as supervisor. Hull was a resident and elector of the Fourth ward, and still resides therein. If the office was required to be filled at said election, it is conceded that Hull was duly elected and entitled thereto. That since January 1, 1892, and prior to the 17th day of May, 1892, there were no official duties for either of the defendants to perform as supervisor. After the annual election of 1891, the clerk of the board prepared a roll of the members thereof for the year 1892, enrolling Munsell and Smith as supervisors for the new Third ward and Hull as supervisor for the Fourth ward. A special session of the board was called on the 17th day of May, 1892. Notice thereof was given to all the supervisors, including the defendants. The clerk, before the board convened, struck Hull's name from the roll of membership, and inserted in place thereof the name of Smith, and struck Smith's name from the roll of membership as the supervisor from the Third ward, and thereupon the session of the board of supervisors was called to order, and the question of the right of the respective defendants to represent, as supervisors, the new Third and Fourth wards was considered by the board, and by a majority vote thereof it was decided that the defendant Thomas H. Munsell was entitled to the seat as supervisor for the new Third ward, and that Christian Smith was entitled to the seat as supervisor for the new Fourth ward.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Simon W. Rosendale,* Atty. Gen., for the People. *Fayette Kelly,* for defendants Smith and Munsell. *Frank C. Laughlin,* for defendant Hull.

PER CURIAM. All of the provisions of the charter of 1891, material to the questions presented for adjudication, with an exception hereafter mentioned, took effect on the 1st day of January, 1892. So much of section 365 of the charter as bears upon the question before us is as follows: "The electors of each ward shall elect one supervisor. * * * The term of office of the supervisor shall be two years. * * * The supervisors in office at the time this act takes effect shall serve out their respective terms hereinafter provided. * * * Each supervisor elected at the annual election of 1890, and who shall be in office on the first Monday of January, 1892, shall be the supervisor of the ward created by this act, in which he resides on the 1st day of October, 1891, for the remainder of the term for which he was elected, if such ward shall be the whole or a part of the ward in which he was elected. At the annual election of 1891, a supervisor shall be elected in each of the wards created by this act, in which a supervisor does not hold over as above provided. At each annual election thereafter the supervisor shall be elected by the electors of each ward, where the term of its supervisor will expire on the first Monday of January following." Section 506 provides that all elective

officers in office when the act takes effect shall serve out the terms for which they were, respectively, elected. It is clear that in construing the provisions of the charter a literal effect cannot be given to all of its provisions, for they are in conflict. There is, as we have seen, a general provision that all elective officers shall serve out the terms for which they were elected, and by section 365 the supervisors in office when the act takes effect shall serve out their respective terms as hereinafter provided. Section 365 provides that the supervisor whose term of office did not expire on the 1st day of January, 1892, should be the supervisor of the ward created by this act in which he resides on the 1st day of October, 1891. Both Munsell and Smith were at the time residents of the new Third ward. It is clear that a ward is entitled to one supervisor. The board of supervisors has been for many years composed of 25 members from the city of Buffalo, and 25 members from the towns of the county. This equality of representation has long continued, and it admits of no doubt that the new charter contemplates a continuance of this equality of representation. Munsell and Smith cannot both represent the Third ward, for that would make 51 supervisors in the board. As between Munsell and Smith, the former is entitled to the office of supervisor of the Third ward. The whole of the territory included in the old Second ward, by the electors of which Munsell was elected, is now embraced in the new Third ward, with the additional territory taken from the old ward designated by that number. Munsell represents the Second ward by another number, while, as regards Smith, only a small part of the territory he was elected to represent is embraced in the new Third. As between the two, therefore, it would seem reasonable that Munsell should be held to be the supervisor of the new Third ward, and unless Smith can represent a ward in which he does not reside, he has been legislated out of office. That was within the power of the legislature. Acts having that effect have been passed and held to be valid. *People* v. *Morrell*, 21 Wend. 563; *Gertum* v. *Board*, 109 N. Y. 170, 16 N. E. Rep. 328.

One of the purposes of the charter was to provide for the election of successors to those supervisors whose terms should expire in January, 1892, by limitation, such election to take place in those newly-created wards which would otherwise have no representative in the board when that time should arrive, and it further provides for the election in a ward within which no supervisor resided on the 1st of October, 1891. In construing this act, we must assume, in the absence of provisions showing that to be the clear intent of the legislature, that it was not intended to make a radical change in the theory and scheme of the elective offices of the state. The General Statutes of the state provide that a supervisor shall reside in the town which he represents. By Rev. St. (8th Ed.) p. 402, § 34, every office becomes vacant on the incumbent ceasing to be an inhabitant of the state, or, if the office be local, of the district, county, town, or city for which he shall have been chosen or appointed, or within which the duties of his office are required to be discharged. The wards of the city and towns of the state, for the purposes of the question here presented, are the same. We know of no exception to the rule that an elective officer must be an elector and resident of the district which he represents. The position of Smith as a representative in the board of supervisors of a ward in which he is not an elector or resident would, under our system of government, be novel and unique. Had he desired to represent the Fourth ward, the course for him to have pursued is clearly indicated in section 365. He should have moved into part of the new Fourth, taken from the old Third. Such removal would not have affected his right to represent the old Third for the remainder of 1891, for the division of the city into new wards did not take effect until January, 1892. His attention was timely called to this question, and he declined to change his domicile, entertaining, it seems, the opinion that he could continue to represent the new Third ward. Obviously the situation here presented did not occur to the

minds of those who drew the charter. The effects and consequences of a con-struction of a statute are to be considered, and where from a literal interpre-tation an effect would follow obviously contrary to the whole intent and spirit of the statute, the intent, and not the literal meaning, must be regarded. We do not think the question here presented is free from doubt, and it is not surprising that the board of supervisors, acting upon the advice of their very competent counsel, should have taken a different view of the question; but our conclusion that Hull is entitled to the office and emoluments of supervisor of the Fourth ward is, we think, in consonance with the provisions of the charter.

It is suggested by the counsel for Munsell and Smith that the decision of the question by the board of supervisors is conclusive, as they are made by the statute judges of the qualifications of their members. We do not accede to this contention. The statute has not conferred upon them the power to decide the question here presented. The plaintiff is entitled to judgment that only one of the defendants is legally entitled to the office of and to act as su-pervisor for one ward in the city of Buffalo; that the defendant Frank H. Hull is entitled to the office of supervisor of the Fourth ward, and to the emoluments thereof; and that the defendant Thomas H. Munsell is entitled to the office of supervisor of the Third ward and the emoluments thereof.